## JOHN P. GALBRAITH v. ELIZA V. WOOD and Another.[1]

January 2, 1914.

Nos. 18,285—(143).

**Lease—advance payment of rent—bankruptcy of lessee.**

In a proposal to take a 15-year lease of a hotel, the lessee offered to pay the lessor the sum of $20,000 as an advance payment on rent, and agreed to keep such advance good during the first five years of the term, with the privilege of reducing at the rate of $6,666.66 per year for the third, fourth and fifth years of the term. The proposal was accepted, the advance payment made, and the lease executed. Within six months after the lessee went into possession, the lessor terminated the lease because the tenant had been adjudged a bankrupt, as she had the right to do under the terms of the lease.

It is *held*:

(1) On the pleadings and evidence, the $20,000 was not paid as security, or as a bonus or independent consideration for the lease, but such payment was made as an advance payment of rent to become due for the third, fourth and fifth years of the term.

(2) Upon the bankruptcy of the lessee, the lessor had the right to terminate the lease and enter the premises, but no right to re-enter without terminating the lease.

(3) Upon the termination of a lease for conditions broken, the lessor is entitled to rent which had previously become due, but not, in the absence of an express agreement, entitled to recover rent subsequently to become due.

[1] Reported in 144 N. W. 945.

(4) Where rent has been paid in advance, under an agreement that it shall be so paid, and the lessor re-enters for conditions broken, he is entitled to retain the rent so paid, though the re-entry is before the expiration of the period for which the rent is paid.

(5) A stipulation in the lease that a re-entry by the lessor for conditions broken shall not work a forfeiture of the rent due or to become due is not invalid because providing a penalty for the lessee's breach of conditions.

(6) In this case, the lessee or his trustee in bankruptcy is not entitled to recover of the lessor any part of the advance payment so made.

Action in the district court for Hennepin county by the trustee in bankruptcy of George R. Kibbee, bankrupt, to recover $18,444.46 rent paid in advance under a certain lease. The case was tried before Molyneaux, J., who dismissed the action. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Morphy, Ewing & Bradford,* for appellant.

*Kerr, Fowler, Ware & Furber* and *Cohen, Atwater & Shaw,* for respondents.

BUNN, J.

Defendants were the owners of the West Hotel, Minneapolis, together with the furniture and fixtures. In August, 1911, George R. Kibbe, of St. Paul, opened negotiations for a lease thereof. On August 31, Kibbe made a proposition in writing to defendants, offering to take a lease of the property for the term of 15 years from September 1, 1911, "upon the terms and conditions hereinafter stated, and in the form of the lease hereto attached * * * and made a part hereof." After stating that defendants were to expend for alterations and repairs not less than $100,000 nor more than $150,000, and that Kibbe was to pay as rent the sum of $40,000 for the first year, $42,500 for the second year, $47,500 for the third year, $50,000 for the fourth year, $55,000 for the fifth year, and $60,000 for each of the ten years thereafter, Kibbe proposed as follows:

"4. At the time of the execution of said lease I will pay you the sum of twenty thousand ($20,000) dollars as an advance payment on rent, which advance I will keep good during the first five (5) years

of said lease, with privilege of reducing at the rate of six thousand six hundred and sixty-six dollars and sixty-six cents ($6,666.66) per year for the third (3), fourth (4) and fifth (5) year of said term."

The proposition was accepted by defendants September 2, 1911. The lease, dated September 1, was executed September 28. On September 29 Kibbe paid to defendants $20,000, and they gave him the following receipt therefor:

"Received of George R. Kibbe Twenty Thousand Dollars and no/100 as advance payment on rent of West Hotel according to proposal for lease of West Hotel. Dated August 31, 1911."

Kibbe went into possession of the hotel under the lease about September 1. The lease provided that the rent should be paid in equal monthly instalments in advance on the first day of each month of the term. Kibbe made these monthly payments to and including the month of February, 1912, and remained in possession until March 12, 1912. On that day he was declared bankrupt in voluntary bankruptcy proceedings, and plaintiff was appointed receiver and took possession of the leased premises. On the fourteenth, plaintiff was appointed trustee of the bankrupt estate. On the same day defendants caused to be served upon Kibbe and the plaintiff a notice that they declared the term of the lease ended, as under the conditions of the lease they had the right to do, because Kibbe had been adjudged a bankrupt. Plaintiff thereupon surrendered the leased premises and defendants took possession thereof.

This action was brought by plaintiff, as trustee in bankruptcy of Kibbe, to recover of defendants the $20,000 paid by Kibbe to them pursuant to his proposition, as hereinbefore stated, less the rent for that part of March during which Kibbe or plaintiff was in possession of the premises. The complaint alleged that the $20,000 was paid by Kibbe to defendants "as an advance payment of rent;" that Kibbe had kept this advance payment good at all times; that at the time defendants declared the lease terminated and re-entered the premises, they had in their possession "the said advance payment" of $20,-000, and that there then became due to Kibbe, and to the plaintiff as his trustee in bankruptcy, the sum of $20,000. The complaint contained appropriate allegations of demand and refusal to pay, and

asked judgment for $18,444.46, with interest from March 14, 1912. The lease and the notice of cancelation were attached as exhibits.

The answer contained a general denial. It admitted the lease, the writing in which Kibbe agreed to advance the $20,000, the notice of cancelation, the surrender of possession to defendants, and the payment of rent up to the end of February. It contained the following allegation in regard to the $20,000 payment:

"Defendants further allege that if any moneys were paid by said Kibbe to these defendants as an advance payment on rent, the same were paid under an agreement between these defendants and said Kibbe that all moneys so paid should be and were paid as advance payment for and on account of the rentals and moneys to be paid by said Kibbe under the terms and conditions of said lease, and under the further agreement that the same should be by said Kibbe kept good, and should remain and be in possession of these defendants *as a guaranty of and for the payment to be made to these* defendants by said Kibbe during the first five years of said lease, with the privilege to him of reducing at the rate of $6,666.66 per year for the third, fourth and fifth years of the term of said lease."

The answer alleged several other defenses and offsets, none of which is material on this appeal.

At the trial, which was by the court without a jury, plaintiff proved the receipt by defendants of the $20,000 and, on this evidence and the admissions in the pleadings, rested. Defendants moved to dismiss on the ground that the $20,000 was paid as advance rent and was forfeited when the lease was canceled, and that plaintiff had no right to recover it back. The trial court sustained this position, and granted the motion. A new trial was denied and plaintiff appealed.

Plaintiff claims that the money was paid by Kibbe to defendants as a guaranty or security for the payment of rent. Defendant claims that it was paid as a bonus or an inducement to defendants to make the lease. If either of these claims found support in the pleadings or evidence, the decision of the case would present but little difficulty. If the money was deposited as security for the payment by Kibbe of the rent, it would be reasonably clear that, upon the termination of

the lease, Kibbe, or the plaintiff as the trustee in bankruptcy of his estate, would be entitled to a return of the sum deposited, less the amount of rent due and unpaid at the time of the termination. Scott v. Montells, 50 N. Y. Super. Ct. 448, Id. 109 N. Y. 1, 15 N. E. 729; Chaude v. Shepard, 122 N. Y. 397, 25 N. E. 358; Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425; Caesar v. Rubinson, 174 N. Y. 492, 67 N. E. 58. If the $20,000 was paid by Kibbe as a bonus, as an independent consideration to induce defendants to make the lease, it is equally clear that a cancelation of the lease by the landlord, for any cause which justifies the act, would not entitle Kibbe or plaintiff to receive back any part of the sum so paid.

But the question is not so easily solved. There is an absolute lack of anything in the pleadings or the evidence to support defendants' claim that the money was paid as a bonus or an independent consideration to induce them to make the lease. And we feel obliged to hold that the claim of plaintiff that the money was deposited as security is not sustained by the pleadings or the evidence. The complaint distinctly alleges that the $20,000 was paid by Kibbe to defendants "as an advance payment of rent," and refers to "this advance payment," and "the said advance payment" whenever the pleader has occasion to mention the payment. Nowhere in the complaint is there any suggestion of an allegation that the $20,000 was deposited with defendants as security. Only in the answer does any suggestion of "security" or "guaranty" appear. The allegations of the answer in this respect we have already quoted. They were denied in the reply, and clearly furnish no basis for a claim by plaintiff that the money was not paid as an advance payment of rent, but as security. There was no evidence as to the purpose for which the $20,000 was paid and received other than the written proposal of Kibbe and the receipt for the money. The proposal clearly states "I will pay you the sum of $20,000 as an advance payment on rent." The receipt acknowledges payment of the sum "as advance payment on rent." Kibbe, in the proposal, agrees to keep this "advance payment" good during the first five years of the lease, with the privilege of "reducing at the rate of $6,666.66 per year for the third (3), fourth (4) and fifth (5) years of said term." This language, in

the absence of extrinsic evidence explaining its meaning, is fairly susceptible of no other construction than that the $20,000 was paid on account of the rent to become due the third, fourth and fifth years of the term. The money was paid to defendants, not deposited with a third person. The agreement of Kibbe to keep the "advance" good during the first five years of the lease does not convey the idea that the payment was as security, when construed with the provision giving the right to "reduce" the advance by applying one-third thereof to the payment of rent for each of the third, fourth and fifth years of the term. While the $20,000 may in fact have been paid as security, as it may in fact have been paid as a consideration to remove an obstacle that arose in the negotiations for the lease, on the pleadings and evidence we must and do hold that it was what the pleadings and evidence call it, an advance payment of rent.

The question then is this: The tenant having, at the time of entering into the lease, paid $20,000 on account of the rent for the third, fourth and fifth years of the 15-year term, and the landlord having terminated the lease during the first year for a reason which, under the terms of the lease, justified the act, can the tenant, or his trustee in bankruptcy, recover back the advance rent so paid? The lease expressly provides that if the lessee shall be declared bankrupt or insolvent, the lessors may declare the term ended, re-enter the premises, take possession thereof and hold the same as fully and completely as if the 15-year term had expired. It also provides that such termination of the lease, re-entering, occupying or re-renting the premises, "shall in no manner act as a forfeiture of any rent due, or to grow due, or the right of said lessors to the performance of the covenants and agreements by said lessee to be kept and performed as specified herein."

We are unable to agree to the claim of plaintiff that upon the bankruptcy of the lessee the lessors might have re-entered the premises, without terminating the lease, and have held the lessee to the performance of all the covenants in the lease, including the payment of rent for the balance of the term. The lease gives the lessors no such right; the default clause provides that the lessors may, at their election, declare the term ended and re-enter the premises. It gives but

a single remedy. Of course defendants were not obliged to terminate the lease, but they had the clear right to do so, and certainly were not bound to retain a bankrupt tenant, with the probability of non-payment of the rent, and a sale of the leasehold by the bankrupt estate.

It is the law that, upon the assertion of a forefeiture by the landlord, he is still entitled to rent which had previously become due, but not entitled to recover rent subsequently to become due. Indeed, such a forfeiture terminates the relation of landlord and tenant, and no rent can subsequently become due. 1 Tiffany, Landlord & T. 1174; 18 Am. & Eng. Enc. (2d ed.) 392; 24 Cyc. 1359; Stees v. Kranz, 32 Minn. 313, 20 N. W. 241. This is clearly the settled doctrine where there is no express stipulation in the lease giving the landlord the right to recover the rent for the balance of the term. Where there is such a stipulation, the tendency of the decisions is to hold it valid, and to continue the liability of the tenant in spite of the termination of the lease. Such liability is for any deficiency in the amount of rent obtained on a lease to another. 1 Tiffany, 1175, et seq. and cases cited. This is not strictly a liability for rent, but a contractual liability based upon the agreement in the case.

In case the rent has been paid in advance under a stipulation that it shall be so paid, and the landlord re-enters for conditions broken, even in the absence of an agreement to that effect, the landlord is entitled to retain the rent so paid, though the re-entry is before the expiration of the period for which the rent was paid. Hepp Wall Paper Co. v. Deahl, 53 Colo. 274, 125 Pac. 491. Even where the rent has not been paid, though according to the lease it was payable in advance, the weight of authority is that the landlord may recover the rent for the whole period for which it was due, though he re-enters on the day after it falls due. 1 Tiffany, 1179; 18 Am. & Eng. Enc. (2d ed.) 302, and cases cited. In criticising Massachusetts and Michigan cases denying the right of recovery, Mr. Tiffany says they are decided without any discussion of the matter, and that it is difficult to understand how, rent having become due at the

commencement of the rent period, it can cease to be due because the tenancy subsequently comes to an end.

Under these rules, had the lease required Kibbe to pay the first year's rent in advance, and had he done so, the re-entry of defendants six months after the tenancy began, for breach of conditions by Kibbe, would operate to terminate the relation of landlord and tenant, but would not entitle Kibbe to recover any portion of the rent so paid. This would be so though the lease had not provided that the rent so paid would be forfeited. Does it change the situation that the payment was made as advance rent for a part of the term in the future after the time the relation has ceased? It is said that, because there is no occupancy of the leased premises, no rent is earned. But the same may be said of any case where rent has been paid in advance and the tenancy terminated before the period for which the rent was so paid expires.

In this case the parties stipulated that a re-entry of the lessor for conditions broken should not work a forfeiture of the rent due or to grow due. There can be no fair doubt that this agreement covers the $20,000 payment of rent in advance. It is urged that this stipulation in the lease is invalid, because providing a penalty for the tenant's breach of covenant. We cannot sustain this view. It is not necessary to hold that a provision making the tenant liable for the rent the full term would be valid, though there are cases so holding. Here we have at most a forfeiture of a sum amounting to one-half of the first year's rent. The parties were dealing in large figures. The rent for the entire term would be over $800,000. The hotel was a very valuable property, and it is not difficult to see the injury that would probably be caused by an act of the tenant that made necessary a cancelation of the lease, with the consequent vacancy, damage to the property, and difficulty in securing a new tenant who was competent and responsible. And it would be difficult to measure the damages that might be so caused. It is not improbable that these considerations moved defendants to insist on the advance payment. We are unable to say, conceding that defendants' right to the money depends

upon the validity of the so-called forfeiture clause, that they are not entitled to retain it.

There seems to be no adjudicated case that is on all fours with the case at bar. As we have already said, the New York cases relied on by plaintiff are clearly distinguishable, as in each it was expressly provided that the payment was made as security. The distinction is clearly pointed out in one of the cases. Chaude v. Shepard, 122 N. Y. 397, 25 N. E. 358. The case of Stees v. Kranz, 32 Minn. 313, 20 N. W. 241, cited by plaintiff, is not in his favor. Dutton v. Christie, 63 Wash. 372, 115 Pac. 856, relied on by defendants, does not decide the precise question involved here. In that case the lease declared that it was given in consideration of the covenants of the lessee and of the payment of $1,500, with the stipulation added that the payment should, in case of full performance of the contract, be credited in payment of the rent for the last two months of the term, but otherwise that it should belong to the lessor as a part of the consideration for the lease. The decision that the lessor was entitled to retain the payment was based upon the proposition that it was paid as such a consideration, and that, when so paid, the title passed to the lessor.

We hold that the $20,000 payment was made as an advance payment on the rent for the third, fourth and fifth years of the term; that it was the default of the tenant that prevented his right to have the payment so applied, and that neither he nor plaintiff, who of course stands in his shoes, can recover back the payment so made.

Order affirmed.